UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
                                      :

BADISSE DAVID MEHMET,              :
                                        :

                  Plaintiff,    :

         - against -             :

                                        :

STEVEN GAUTIER AND 26 BNDO LLC,   :

                                        :

                  Defendants.  :
                                        :
-------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/30/2019

18-CV-9090 (VSB)

**OPINION & ORDER**

Appearances:

Badisse David Mehmet
Raleigh, North Carolina
*Pro Se Plaintiff*

Santino Golino
Golino Law Group, PLLC
New York, New York
*Counsel for Defendants*

<u>VERNON S. BRODERICK, United States District Judge</u>:

       Plaintiff Badisse David Mehmet brings this fraud action against Defendants Steven Gautier and 26 BNDO LLC (the "LLC"). Before me are (i) Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), (5), and (6), and (ii) Plaintiff's cross-motion to disqualify Defendants' counsel. Because Plaintiff has failed to state a claim for fraud, and because his remaining common law claim cannot satisfy the amount-in-controversy requirement, Defendants' motion to dismiss is GRANTED. As a result, Plaintiff's cross-motion to disqualify is moot.

## I.    **Background**[1]

Plaintiff, a North Carolina resident, is the former owner of a rent-stabilized building located at 26 Bond Street in New York, New York (the "Building"). (Compl. ¶ 7.)[2] On March 21, 2016, he sold this building to the LLC, a New York corporation. (*Id.* ¶¶ 3, 7.) The LLC was represented at the closing by Gautier, who is a New York resident and vice president of Winther Investment, Inc., which is the "General Partner" of West Village Apartments, LP, which is the sole member of the LLC. (*Id.* ¶¶ 4, 8.) Gautier signed the closing documents and issued payment to Plaintiff on the LLC's behalf. (*Id.* ¶ 8.)

During the closing, Gautier took Plaintiff and Plaintiff's wife into a private office and told them that he did not want them to have any rights in the building after the sale. (*Id.* ¶ 9.) He asked them to sign a document releasing their rights in an over-lease and sub-lease in "LOFT #4" ("Loft 4"), a unit in the Building.[3] (*Id.*) Gautier did not provide a copy of this document to Plaintiff and his wife. (*Id.* ¶ 11.) For two years afterwards, Plaintiff and his wife received no communications from Defendant. (*Id.* ¶ 12.)

Ten months after the closing, the LLC filed a non-payment of rent action in the Civil Court of the City of New York, Housing Part. (*See id.* ¶ 15.) Plaintiff was never served with a rent demand, petition, or notice of petition in this action, as required by law. (*Id.* ¶ 15; *id.* at 3

---

[1] The following factual summary is drawn principally from the allegations contained in Plaintiff's complaint and from certain state court documents that the parties have submitted and whose authenticity is undisputed by the parties. I may consider documents outside the pleadings on a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014), and may take judicial notice of the existence of state court documents for the purposes of a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), *see Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998).

[2] "Compl." refers to the Complaint and Demand for Jury Trial, filed October 2, 2018 ("Complaint"). (Doc. 1.)

[3] Other documents in the record suggest that Plaintiff and his wife occupied Loft 4, but Plaintiff does not confirm this in his pleading or otherwise explain why he was releasing his rights to Loft 4 in particular.

n.1; *id.* ¶¶ 24–25.).  *See* N.Y. Real Prop. Acts. & Procs. L. §§ 711(2); 731(1).  The LLC then

obtained a possessory and money judgment against Plaintiff on June 14, 2017.  (Compl. ¶ 15;

Pl.'s Aff. Ex. C; Pl.'s Mem. 4.)[4]  The Complaint alleges that this judgment was in the amount of

$24,570 and included an award of attorneys' fees in the amount of $25,000.  (Compl. ¶ 15.)

However, Plaintiff indicates in his opposition that no attorneys' fees were actually awarded and

that his original allegation was based on a misunderstanding.  (Pl.'s Mem. 8; Pl.'s Aff. ¶ 11.)

According to Plaintiff, the LLC obtained the housing court judgment against him based

on "Gautier's CONCEALMENT of the release document and his FALSE STATEMENTS to that

court that the Plaintiff and the Plaintiff's wife were still liable for the over-lease and the sub-

lease when they were NOT."  (Compl. ¶ 15.)  Plaintiff further alleges that Gautier's intention

was to hold the Plaintiff and the Plaintiff's wife liable if the sub-tenants failed to pay their rent

after the closing, but also to be able to "protect himself from any tenancy claims" by Plaintiff and

his wife.  (*Id.* ¶ 16.)

On October 1, 2018, Plaintiff filed an order to show cause in housing court to vacate the

money judgment against him based on improper service.  (Def.'s Aff. Ex. C.)  On October 11,

2018, the housing court granted the order to show cause, vacating the money judgment and

placing the matter back on the calendar.  (Pl.'s Aff. ¶ 4; *Id.* Ex. D; Pl.'s Mem. 6.)  Neither party

has indicated to the court whether that action has been resolved or is still ongoing.  In the process

of vacating the judgment, Plaintiff discovered that Defendants had purported to serve the rent

---

[4] "Pl.'s Aff." refers to Plaintiff's Affidavit in Support of Cross-Motion to Disqualify and in Opposition to Motion to Dismiss, which was not submitted to the pro se office and has not been filed on the electronic docket but was provided in Defendants' April 22, 2018, courtesy copy of the pending motions.  *See infra* Part IV.A.  "Pl.'s Mem." refers to Plaintiff's Memorandum of Law in Support of Cross-Motion to Disqualify Under Rule 3.7 and in Opposition to Motion to Dismiss, filed February 4, 2019.  (Docs. 16, 17.)

demand and housing court petition on him at Loft 4 of 26 Bond Street, even though he did not live there and they knew he did not live there.  (Pl.'s Aff. ¶ 1; Pl.'s Mem. 11.)

The LLC also appears to have filed an action against Plaintiff in the Supreme Court of the State of New York, New York County.  (Pl.'s Aff. ¶ 8; *Id.* Ex. F.)  Plaintiff provides no additional context or documents about this action, except the order dismissing the case upon Plaintiff's motion on October 1, 2018, in which the Honorable Gerald Lebovits found that because the LLC acknowledged that "the subtenants attorned to [the LLC] as their new landlord," the LLC was "judicially estopped from what Mehmet contends" and barred from collecting rent from March 2016 through September 2016.  (Pl.'s Aff. ¶ 8; *Id.* Ex. F.)[5]  The order does not contain information relating to the basis for the action or the relief sought, or the nature of "what Mehmet contends."  (*See* Pl.'s Aff. Ex. F.)  Defendant's counsel represents in Defendants' reply memorandum that the LLC intends to move to reargue that decision.  (Defs.' Reply 9).[6]

## II.    **Procedural History**

Plaintiff commenced this action on October 2, 2018, by filing the Complaint.  (Doc. 1.) On December 26, 2018, Defendants filed a motion to dismiss, (Doc. 7), along with an affirmation, affidavit, exhibits and memorandum of law in support, (Docs. 8–10).  By order dated January 2, 2019, I directed Plaintiff to either file an amended complaint by January 28, 2019, or serve opposition to the motion to dismiss by February 4, 2019.  (Doc. 11.)

On January 7, 2019, Plaintiff filed an affidavit of service relating to the LLC and an

---

[5] This order is handwritten in fairly small print; this quotation represents my best efforts to decipher what it says but it may be inaccurate.

[6] "Defs.' Reply" refers to Defendants' Reply Memorandum of Law in Support of Motion to Dismiss and in Opposition to Plaintiff's Cross-Motion for Disqualification, filed March 18, 2019.  (Doc. 22.)

affidavit of service relating to Gautier. (Docs. 12, 13.) On January 14, 2019, he filed new affidavits of service as to the LLC and Gautier. (Docs. 14, 15.)

On February 4, 2019, the pro se office docketed Plaintiff's "Memorandum of Law in support of Cross-Motion to Disqualify Under Rule 3.7 and In Opposition to Motion to Dismiss" twice, once as a Notice of Motion, (Doc. 16), and once as a Memorandum of Law, (Doc. 17). On February 15, 2019, Defendants submitted a letter alerting me to this error. (Doc. 18.) Defendants informed me that Plaintiff had mailed additional documents to Defendants' counsel and requested that I order Plaintiff to e-file those documents. (*Id.*) They further requested that I hold Plaintiff's cross-motion in abeyance, or in the alternative that I grant an extension for Defendants to oppose the cross-motion and submit a reply in further support of their original motion. (*Id.*) By endorsement dated February 19, 2019, I directed Plaintiff to file all documents in support of his cross-motion on the electronic docket, denied Defendants' request for an abeyance, granted Defendants' request for an extension, and directed Plaintiff to file a reply in further support of his cross-motion by April 8, 2019. (Doc. 19.)

On February 21, 2019, the Clerk's Office docketed a letter from Plaintiff, dated February 15, 2019, in which Plaintiff represented that he had submitted all relevant documents—his sworn affidavit, exhibits, and memorandum of law—to the Clerk's Office, and that as a pro se litigant he was not required to electronically file documents. (Doc. 20.) He also opposed Defendants' request for an extension. On March 18, 2019, Defendants filed a reply affirmation and memorandum of law in opposition to Plaintiff's cross-motion and in further support of their motion. (Docs. 21–22.) On or around April 22, 2019, Defendants' counsel provided my chambers with two (2) courtesy copies of the motion and cross-motion, which included the following documents, which counsel represents are copies of the documents Plaintiff sent to

Defendant's counsel but that were not docketed: (1) Notice of Cross-Motion to Disqualify; (2) Affidavit in Support of Cross-Motion to Disqualify and in Opposition to Motion to Dismiss; (3) Exhibit A, the housing court petition and notice of petition by the LLC against Plaintiff; (4) Exhibit B, the affidavit of conspicuous service and rent demand relating to the housing court action; (5) Exhibit C, the judgment and other documents relating to the housing court action; (6) Exhibit D, the decision/order vacating the housing court default judgment against Plaintiff; (7) Exhibit E, an invoice and air travel itinerary relating to expenses incurred by Plaintiff in the course of vacating the default judgment; (8) Exhibit F, an order of the Supreme Court of the State of New York, New York County, dated October 1, 2018; and (9) Exhibit G, affidavits of service of the summons and complaint in this action upon the LLC and Gautier, two of which are dated December 13, 2018, one of which is dated January 3, 2019, and one of which is dated January 4, 2019. To date, Plaintiff has not addressed and/or taken a position concerning these documents by arranging to have them filed on the electronic docket—through the pro se office or otherwise—as documents supporting his motion, nor has he filed a reply in further support of his cross-motion to disqualify.

### III. <u>Legal Standards</u>

#### A. *Rule 12(b)(1)*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also* Fed R. Civ. P. 12(b)(1). If challenged, a plaintiff is required to show that subject matter jurisdiction exists by a preponderance of the evidence, *id.*, and in analyzing such a challenge "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party

asserting jurisdiction," *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)). Furthermore, in resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court "has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon*, 752 F.3d at 243 (quoting *APWU*, 343 F.3d at 627); *see also Makarova*, 201 F.3d at 113. "If any of the grounds for subject matter jurisdiction are lacking, dismissal is mandatory." *Gunst v. Seaga*, No. 05 Civ. 2626 DAB, 2007 WL 1032265, at *2 (S.D.N.Y. Mar. 30, 2007); *see also United Food & Commercial Workers Union, Local 919, AFL-CIO v. Centermark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994).

Federal courts have original jurisdiction over state law claims pursuant to 28 U.S.C. § 1332(a) where a dispute is between citizens of different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). Where a claim is brought pursuant to § 1332 and the defendant challenges the factual basis for jurisdiction—i.e., the amount in controversy—the party invoking jurisdiction bears the burden of proving there is a "reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Jordan v. Verizon Corp.*, No. 08 Civ. 6414(GEL), 2009 WL 1490813, at *2 (S.D.N.Y. May 27, 2009) (quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994)), *aff'd*, 391 F. App'x 10 (2d. Cir. 2010); *see also Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003).

The burden of proving jurisdiction is "hardly onerous"—there is a "rebuttable

presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Scherer*, 347 F.3d at 397 (quoting *Wolde–Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)). In order to rebut this presumption, the party opposing jurisdiction must prove that it is a "'legal certainty' that the amount recoverable does not meet the jurisdictional threshold." *Id.* (quoting *Wolde–Meskel*, 166 F.3d at 63). Claims for punitive and exemplary damages may be considered in determining the amount in controversy, but they are "to be given closer scrutiny than a claim for actual damages when calculating a jurisdictional amount," *Suarez v. Mosaic Sales Sols. US Operating Co., LLC*, 720 F. App'x 52, 54 (2d Cir. 2018) (summary order) (internal quotation marks omitted), and the trial judge has greater discretion, *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1034 (2d Cir. 1972), *aff'd,* 414 U.S. 291 (1973).

"[B]are statement[s]" that the jurisdictional amount has been met "provides no assurance that this estimate is made in good faith" and thus cannot confer jurisdiction. *Kimm v. KCC Trading, Inc.*, 449 F. App'x 85, 85–86 (2d Cir. 2012) (summary order) (affirming dismissal for lack of subject matter jurisdiction where the plaintiff only "alleged generally that th[e] action involved an amount in controversy exceeding $75,000"). "A plaintiff's mere mention of an amount greater than $75,000 is not a magic talisman that wards off a district court's inquiry into the actual amount at issue." *Bernshteyn v. Feldman*, No. 04 Civ. 1774(GEL), 2006 WL 2516514, at *2 (S.D.N.Y. Aug. 29, 2006). However, "[u]sing boilerplate language that the amount of controversy exceeds $75,000 does not necessarily render the alleged damages conclusory." *Geffner v. Iona Coll.*, No. 13 Civ. 1156(DAB), 2013 WL 5549922, at *4 (S.D.N.Y. Oct. 2, 2013). "When the asserted amount in controversy is based on a cause of action created by state law, 'the federal courts must . . . look to state law to determine the nature and extent of

the right to be enforced.'" *Bernshteyn*, 2006 WL 2516514, at *2 (quoting *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 352–53 (1961)).

      **B.**     *Rule 12(b)(5)*

      Rule 12(b)(5) authorizes a court to dismiss a complaint for insufficient service of process prior to a defendant filing an answer. *See* Fed. R. Civ. P. 12(b)(5). "In deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs the content, issuance, and service of a summons." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). Under Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court— on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). If the plaintiff is able to demonstrate good cause, a district court must grant a plaintiff an extension of time for service. *See id.* Even where a plaintiff does not show good cause, however, district courts may exercise discretion to grant an extension of time to effect adequate service. *See Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007); *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 433 (S.D.N.Y. 2016). In determining whether to grant a discretionary extension, courts look to "(1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether defendant attempted to conceal the defect in service; and (4) whether defendant would be prejudiced by extending plaintiff's time for service." *DeLuca*, 695 F. Supp. 2d at 66.

      Although "[a] process server's affidavit of service constitutes prima facie evidence of proper service," this evidence may be rebutted by "[a] defendant's sworn denial of receipt of service." *Rana v. Islam*, 305 F.R.D. 53, 63 (S.D.N.Y. 2015) (quoting *Old Republic Ins. Co. v.*

*Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002)); *see also Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002) ("Conclusory statements are insufficient to overcome a defendant's sworn affidavit that he was not served."). Once a defendant has properly moved to dismiss pursuant to Rule 12(b)(5), the plaintiff bears the burden of establishing that service was adequate. *See Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (summary order). Courts may also look to materials outside the pleadings when determining whether service was sufficient. *See Darden*, 191 F. Supp. 2d at 386 ("[I]n considering a motion to dismiss pursuant to 12(b)(5) for insufficiency of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction.").

### C.      *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). The court may consider the

complaint, documents attached to the complaint or incorporated by reference, or matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

### D.    *Pro Se Litigant*

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted). Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest." *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (internal quotation marks omitted). "In keeping with these precepts, although Rule 12(b)(6) generally restricts a court's consideration to the four corners of the complaint, pro se pleadings may be read together to determine whether a plaintiff conceivably could be entitled to relief." *Sathianathan v. Smith Barney, Inc.*, No. 04 Civ. 7122(DAB)(FM), 2006 WL 538152, at *13 (S.D.N.Y. Feb. 24, 2006) (collecting cases); *see also Sommersett v. City of New York*, No. 09 Civ. 5916(LTS)(KNF), 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) ("[W]here a *pro se* plaintiff has submitted other papers to the Court, such as legal memoranda, the Court may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations." (citation omitted)); *Ibok v. Sector*, No. 05 Civ.6584 MBM, 2006 WL 302336, at * 1 n.1 (S.D.N.Y. Feb. 9, 2006) ("The Court may consider the factual allegations in plaintiff's Response

to supplement those in his complaint because of the liberal standard afforded to the pleadings of pro se litigants.").

Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual allegations. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). In other words, the "duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (citation omitted).

### E.    *Motion to Disqualify*

"The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." *Hempstead Video, Inc., v. Inc. Vill. of Valley Stream,* 409 F.3d 127, 132 (2d Cir.2005) (internal quotation marks omitted). Although a court benefits from guidance from American Bar Association and state disciplinary rules, ultimately such rules "merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." *Id.* "A federal court's decision of whether to disqualify counsel must ultimately be guided by the goal of a trial process that lacks any hint of a taint." *Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C.*, 440 F. Supp. 2d 303, 309 (S.D.N.Y. 2006) (internal quotation marks omitted). The party seeking disqualification "bears a heavy burden of demonstrating that disqualification is necessary," and requests for disqualification should be reviewed with "fairly strict scrutiny." *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 231–32 (S.D.N.Y. 2010) (internal quotation marks omitted).

### IV.    <u>Discussion</u>

Plaintiff brings two causes of action: (1) fraud against both Defendants, based on their "conceal[ment] of the release document from" the housing court for the purpose of obtaining a

judgment, and (2) negligence against the LLC for failing to serve Plaintiff with the rent demands, notice, and petition, required to commence a non-payment action in housing court in New York City. (Compl. ¶¶ 18–29.) As damages, Plaintiff seeks nominal damages of $1, compensatory damages in the amount of $212 plus $49,570, exemplary damages on the fraud cause of action in the amount of $250,000, and "such other and further relief as this Court deems just and proper." (*Id.* at 8.) Defendants move to dismiss on the following general grounds: (1) lack of subject matter jurisdiction; (2) insufficient service of process; and (3) failure to state a claim, on the basis that Plaintiff's fraud claim is duplicative of his breach of contract claim, that his negligence claim is barred by the doctrine of res judicata, and that Gautier cannot be held liable as "an agent for a disclosed principal.". (*See generally* Defs.' Mem.)[7] Plaintiff opposes, and cross-moves to disqualify Defendants' counsel pursuant to the Rule 3.7 of the American Bar Association Model Rules of Professional Conduct. (Pl.'s Mem. 1–14.)

##    A.    *Materials Considered*

I first address the administrative problem posed by the fact that several of Plaintiff's supporting documents do not appear on the electronic docket and are only before me in the forms provided by Defendants. (*See* 2/21/19 Ltr. 1.)[8] I find it appropriate for me to consider them for the following reasons: (1) Plaintiff represents that he sent a notice of motion, sworn affidavit, and exhibits to the pro se office, (*see id.*); (2) Defendants have supplied me with copies of a notice of motion, sworn affidavit, and six exhibits, thus corresponding to the materials described by Plaintiff; (3) Plaintiff's memorandum of law reiterates, refers to, and/or relies on all relevant

---

[7] "Defs' Mem." refers to Defendants' Memorandum of Law in Support of Motion to Dismiss Pursuant to Sections 12(b)(1), (5), and (6) of the Federal Rules of Civil Procedure, filed December 26, 2018. (Doc. 10.)

[8] "2/21/Ltr." refers to Plaintiff's letter to the court dated February 15, 2019, and filed on the electronic docket on February 21, 2019. (Doc. 20.)

material factual assertions made in the affidavit or exhibits, providing corroboration of their authenticity; and (4) Plaintiff had the opportunity to resubmit the documents but did not.

### B.     *Subject Matter Jurisdiction*

As Plaintiff raises no federal causes of action, jurisdiction must be based on diversity under 28 U.S.C. § 1332(a).  Defendants argue that Plaintiff has failed to satisfy the amount-in-controversy requirement to sustain such jurisdiction because the housing court judgment (1) did not award Defendants attorneys' fees, and (2) was, in any event, vacated shortly after the filing of the complaint.  (Defs.' Mem. 4–6.)  The only remaining claim is for exemplary damages, which Defendants argue cannot stand alone without an underlying cause of action.  (*Id.* at 6–8.)  Plaintiff concedes that no attorney fees were awarded, but that he believed they had been in good faith and based on Defendants' misrepresentations; he further argues that the amount in controversy is to be determined at the time an action is commenced.  (Pl.'s Mem. 6–9.)

The law is clear that the amount in controversy is typically determined as of the date the suit is filed.  *Scherer*, 347 F.3d at 397.  However, a court may consider events after the filing of the complaint when post-filing events suggest that the amount in controversy allegation in the complaint was made in bad faith."  *Hall v. EarthLink Network, Inc.,* 396 F.3d 500, 507 (2d Cir. 2005).  Even if a plaintiff believed in good faith that its claim satisfied the amount-in-controversy requirement, "the eventual discovery of a fact that establishes that the plaintiff could not meet the jurisdictional amount *at the time of filing* will defeat jurisdiction."  *Bernshteyn*, 2006 WL 2516514, at *3 (citing *Tongkook*, 14 F.3d at 785).  To warrant dismissal, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount."  *Carling v. Peters*, No. 10 Civ. 4573(PAE)(HBP), 2013 WL 865842, at *4 (S.D.N.Y. Mar. 8, 2013)

Here, because no attorneys' fees were ever awarded on the housing court judgment, it is "a legal certainty," *id.*, that Plaintiff could not have recovered that portion of his request for damages even "at the time of filing." *Bernshteyn*, 2006 WL 2515614, at *3. But the vacatur of the housing court judgment on October 11, 2018 is a "post-filing event[]" that "do[es] not affect the calculation of the amount in controversy" *Carling*, 2013 WL 865842, at *3. Defendants' repetition of the fact that Plaintiff did not serve the summons and complaint in this action until two months after the judgment was vacated, (*see* Defs.' Mem. 6), is not sufficient to rebut the presumption of good faith.

However, on its own, the value of the money judgment, nominal damages, and costs total $24,963—under the jurisdictional amount—so Plaintiff points to his exemplary damages to make the amount in controversy exceed $75,000. (*See* Pl.'s Mem. 7–8.) Reliance on punitive damages to satisfy the amount-in-controversy "triggers special judicial scrutiny." *Agnesini v. Doctor's Assocs., Inc.*, No. 10 cv 9190(BSJ)(FM), 2012 WL 5873605, at *5 (S.D.N.Y. Nov. 13, 2012) (quoting *Lieb v. Am. Motors Corp.*, 538 F. Supp. 127, 133 (S.D.N.Y. 1982)); *see also Nwanza v. Time, Inc.*, 125 F. App'x 346, 348–49 (2d Cir. 2005) (summary order). A "trial court is plainly not compelled to accept a claim of punitive damages, however unwarranted, made for the purpose of conferring federal jurisdiction." *Suarez*, 720 F. App'x at 54 (quoting *Zahn*, 469 F.2d at 1033 n.1).

"Although the amount in controversy 'is a federal question to be decided under federal standards,'" whether punitive damages are available for a state law cause of action is a question of state law. *Agnesini*, 2012 WL 5873605, at *5 (quoting *Horton*, 367 U.S. at 352–53). Under New York law,[9] "the standard for imposing punitive damages is a strict one and punitive

---

[9] "A federal court sitting in diversity must apply the choice of law rules of the forum state, which in this case is New York." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 485 (S.D.N.Y. 2017) (citing *Licci ex rel. Licci v. Lebanese*

damages will be awarded only in exceptional cases," where the conduct "manifest[s] spite or malice, or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wil[l]ful or wanton." *Marinaccio v. Town of Clarence*, 20 N.Y.3d 506, 511 (2013) (internal quotation marks omitted).

Therefore, evaluating the complaint in light of the above standard, I cannot conclude to a legal certainty that under this standard, Plaintiff could not recover at least $50,037 in punitive damages if, arguendo, he has a viable fraud claim. I address the viability of that claim *infra* Part VI.D.

### C. *Personal Jurisdiction*

Plaintiff has filed four affidavits of service in this action that swear that service was made in the following ways:

- On November 29, 2018, service was made on the LLC by delivering a copy of the summons and complaint on Vanessa Smith, property manager, as representative of the corporation, at 29 West 26th Street, 6th Floor, New York, NY 10010, and by mailing the documents to the same address on December 3, 2018. (Doc. 14.)

- On November 29, 2018, service was made on Gautier by delivering a copy of the summons and complaint on Vanessa Smith, property manager, a person of suitable age and discretion, at Gautier's place of business, 29 West 26th Street, 6th Floor, New York, NY 10010, and by mailing the documents to the same address. (Doc. 15)

---

*Canadian Bank*, SAL, 672 F.3d 155, 157 (2d Cir. 2012)). Under New York law, "where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry." *Id.* (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)). Such consent may be implied by the parties' reliance on New York law in their briefs. *Id.* Accordingly, because both parties cite only to New York law in their papers, I apply New York law to Plaintiff's common law claims and requests for damages.

- On December 29, 2018, service was made on Gautier by delivering a copy of the summons and complaint on Audrey "Doe," a person of suitable age and discretion, at Gautier's place of business, 29 West 26th Street, 6th Floor, New York, NY 10010, and by mailing the documents to the same address on December 3, 2018. (Doc. 13.)

- On January 2, 2019, service was made on "Chris Young, Property Manager" at 1919 Post Oak Park Dr 3101, Houston, TX 77027. (Doc. 12.)

On the face of the affidavits of service, the service attested to appears to be in compliance with the New York Civil Practice Law and Rules. *See* N.Y. C.P.L.R. §§ 308 (providing that personal service may be made upon a natural person by delivering the summons to a person of suitable age and discretion at the actual place of business of the person to be served and by mailing the summons to his actual place of business); *id.* § 311 (personal service upon a corporation shall be made "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service").

Defendants move to dismiss on the grounds that the summons and complaint were served upon a person not authorized to accept service on behalf of the LLC, in violation of N.Y. C.P.L.R. § 311, and because the summons and complaint were not subsequently mailed to Gautier, in violation of N.Y. C.P.L.R. § 308. (Defs.' Mem. 15–18.) Defendants support their motion with a sworn affidavit by an individual named "Ariel Ellis" who states that on December 3, 3018, an individual came to her place of work—Willowick Properties LLC, located at 29 West 26th Street, 6th Floor, New York, NY 10010—and "dropped a yellow envelope on [her] desk" without asking whether Gautier or anyone from the LLC was present. (Ellis Aff. ¶ 1–6 .)[10] She

---

[10] "Ellis Aff." refers to the Affidavit in Support of Motion filed by Plaintiff on December 26, 2018. (Doc. 9.)

further swears that "we" had not received a copy of the summons and complaint in the mail addressed to either defendant. (*Id.* ¶ 7.)

The affidavits of service sworn to by Plaintiff's process servers "constitute[] prima facie evidence of proper service." *See Rana*, 305 F.R.D. at 63. "[I]n order to prevail on [their] [Federal Rule of Civil Procedure] 12(b)(5) motion to dismiss," Defendants must "swear to specific facts to rebut the statements in the process server's affidavits." *Li v. Ichiro Sushi, Inc.*, No. 14-cv-10242(AJN), 2016 WL 1271068, at *5 (S.D.N.Y. Mar. 29, 2016) (quoting *Old Republic*, 301 F.3d at 58. Defendants have not done so. Not only is Ellis not a defendant, but her affidavit concerns an entirely different date than the one on which Plaintiff purports to have effected service, and does not even state that the "yellow envelope" she received contained the summons and complaint in this action. In other words, Ellis has not sworn that the individual who appeared at Willowick's offices on December 3, 2018 was attempting to serve process in this case, nor has she sworn that service was not made properly on November 29, 2018.

Accordingly, Defendants have not rebutted the presumption that service was proper, and their motion to dismiss for lack of personal jurisdiction is denied.

### D. *Fraud*

#### 1. **Applicable Law**

To state a claim for common law fraud under New York law, a plaintiff must allege facts showing: "[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (1996)).

"Where a fraud claim is premised upon an alleged breach of contractual duties, and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie." *Trodale Holdings LLC v. Bristol Healthcare Inv'rs L.P.*, No. 16 Civ. 4254 (KPF), 2018 WL 2980325, at *4 (S.D.N.Y. June 14, 2018) (citation omitted). Similarly, "a misrepresentation that is merely a statement of intent to perform under the contract cannot constitute fraud." *Wild Bunch, SA v. Vendian Entm't, LLC*, 256 F. Supp. 3d 497, 502 (S.D.N.Y. 2017) (quoting *Manning v. Utils. Mut. Ins. Co., Inc.*, 254 F.3d 387, 401 (2d Cir. 2001)). To maintain a fraud claim that does not merge with a potential breach of contract claim, a plaintiff must do one of the following: "[1] demonstrate a legal duty separate from the duty to perform under the contract; or [2] demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or [3] seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (citations omitted)

### 2. Application

Defendant argues that Plaintiff's fraud claim fails because it is based only on an alleged breach of contract. (Defs.' Mem. 8–10.) According to Defendants, Plaintiff's allegation that Defendants committed fraud by commencing the housing court action amounts merely to an allegation that Defendants breached the parties' release of claims as to the overlease and sublease. (*Id.*) In his papers in reply, Plaintiff does not dispute Defendants' characterization of his claim, arguing that his fraud claims rest not on a breach of contract but on "the Defendants' intentional and malicious fraud against the Court that harmed me." (Pl.'s Aff. ¶ 9.) He contends that Defendants "defrauded the Housing Court . . . by concealment and

misrepresentations," which relied on those misrepresentations, allowing Defendants to obtain a default judgment against Plaintiff. (Pl.'s Mem. 11.)

However, the New York Court of Appeals has held that a claim of fraud may not be "based on the reliance of a third party," abrogating the cases cited by Plaintiff. *Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 829 (2016). Therefore, a theory of fraud based on the Housing Court's reliance on Defendants' misrepresentations must fail.

Plaintiff appears to concede that the remainder of his fraud claim is essentially a breach of contract claim, both explicitly—by reiterating that his claim is not premised on a breach of contract but on a fraud against the housing court, (*see* Pl.'s Mem. 10; Pl.'s Aff. ¶ 9)—and implicitly, *see AT & T Corp. v. Syniverse Techs., Inc.*, No. 12 Civ. 1812(NRB), 2014 WL 4412392, at *7 (S.D.N.Y. Sept. 8, 2014) (concluding that plaintiff's "silence [in its opposition] concedes the point"). Even if Plaintiff had not conceded this point, I agree with Defendants that even on the face of the complaint, what remains of Plaintiff's fraud claim appears to simply be a breach of the alleged releases, which does not give rise to a fraud cause of action under New York law. *See Trodale*, 2018 WL 2980325, at *4.

To the extent that Plaintiff seeks to assert fraud based on Gautier's alleged intention at the time of contracting "to hold the Plaintiff and the Plaintiff's wife liable if the sub-tenants did NOT pay the rent after the closing BUT also to protect himself from any tenancy claims by the Plaintiff and the Plaintiff's wife after the closing," (Compl. ¶ 16), even drawing all inferences in favor of Plaintiff, this appears to be a nonactionable "misrepresentation that is merely a statement of intent to perform under the contract," *Wild Bunch, SA*, 256 F. Supp. 3d at 502 (internal quotation marks omitted). Plaintiff has not alleged any "legal duty separate from the duty to perform under the contract," "a fraudulent misrepresentation collateral or extraneous to

the contract," or "any special damages that [were] caused by the misrepresentation." *See*

*Bridgestone/Firestone, Inc.*, 98 F.3d at 20. Nor has Plaintiff alleged any other facts that would

suggest Defendants made an actionable misrepresentation to him, or that he relied on any such

misrepresentation.

Accordingly, Defendants' motion to dismiss Plaintiff's fraud claim is granted.

## E.    *Remaining Claims*

"A plaintiff may not rely upon a claim for damages that may not be legally awarded

under state law in order to meet the threshold amount in controversy requirement . . . ." *Trepel v.*

*Abdoulaye*, 185 F. Supp. 2d 308, 310 (S.D.N.Y. 2002). Because Plaintiff's allegations do not

give rise to a viable fraud claim under New York law, his only remaining claim is for negligence,

for which he does not seek exemplary or punitive damages. (*See* Compl. at 8.) The only

damages sought by the negligence cause of action in the Complaint are compensatory, in the

amount of $212 plus $24,570.[11] (*Id.; id.* ¶ 29.) In his memorandum of law, Plaintiff also seeks

as damages the money he spent on travel and accommodation when he was forced to come to

New York from North Carolina to "defend against the Defendants' fraudulent conduct against

him." (Pl.'s Mem. 8; *see also* Pl.'s Aff. Ex. E.) These alleged expenses total approximately

$1,158. (*See* Pl.'s Mem. 8.) The total of these amounts is $25,940.

Therefore, it is a "legal certainty that as this action is currently pled, Plaintiff cannot

recover sufficient damages to invoke federal jurisdiction." *Swan Media Grp., Inc. v. Staub*, 841

F. Supp. 2d 804, 809 (S.D.N.Y. 2012) (dismissing action without prejudice to repleading within

thirty days, where plaintiff had failed to state a claim for breach of contract and remaining claims

---

[11] In the Complaint, Plaintiff states in his negligence claim that he "has been damaged in the amount of $49,570.00 including other damages which are CONTINUING," (Compl. ¶ 29), but this number includes the attorneys' fees he originally sought but as to which he now concedes he is not entitled.

could not result in damages that would satisfy the jurisdictional threshold); *see also Deutsch v. Hewes St. Realty Corp.*, 359 F.2d 96, 100 (2d Cir. 1966) ("[D]ismissal will be proper when, under applicable law, the damages claimed are not recoverable" (*citing Parmelee v. Ackerman*, 252 F.2d 721, 722 (6th Cir. 1958) (dismissing action for failure to satisfy the amount in controversy where one alleged cause of action did not exist, and the maximum damages for the other did not equal the jurisdictional minimum)); *Howard v. Mun. Credit Union*, No. 05 Civ. 7488(LAK), 2008 WL 782760, at *10 (S.D.N.Y. Mar. 25, 2008) (dismissing plaintiff's federal claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and directing plaintiff to amend complaint as to the remaining state law claims where report and recommendation found that Plaintiff had failed to show the amount in controversy exceeded $75,000); *Nwachukwu v. Chem. Bank,* No. 96 CIV. 5118(KMW), 1997 WL 441941 (S.D.N.Y. Aug. 6, 1997) (finding that the court lacked diversity jurisdiction where five claims were dismissed for failure to state a claim and the last remaining claim, by itself, did not satisfy the amount in controversy requirement).

Accordingly, Defendants' motion to dismiss the remaining claim for lack of subject matter jurisdiction is granted, and I do not reach Defendants' remaining contentions. Plaintiff is granted leave to amend within sixty days. Because I have found this court lacks subject matter jurisdiction over this action, I lack the authority to hear Plaintiff's cross-motion to disqualify Defendants' counsel and deny the cross-motion as moot.

### V. Conclusion

For the reasons set forth above, Defendants' motion to dismiss the complaint is GRANTED. Plaintiff's fraud claim is dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), and the remaining claims are dismissed without prejudice for lack of subject-matter jurisdiction. Plaintiff's cross-motion to disqualify Defendants' counsel is DENIED as moot. Plaintiff's claims are dismissed without prejudice to re-filing an amended complaint that sufficiently alleges subject matter jurisdiction within sixty (60) days. If he does not do so within that time, this case will be closed.

The Clerk of Court is respectfully directed to terminate the gavels at Documents 7 and 16. The Clerk of Court is further respectfully directed to mail a copy of this Opinion & Order to the pro se Plaintiff.

SO ORDERED.

Dated: September 30, 2019
New York, New York

Vernon S. Broderick
United States District Judge